FILED

2003 DEC -4 P 4: 45

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OSCAR ORTIZ | : | PRISONER<br>CIVIL NO. 3:02CV1994 (GLG)(WIG) |
| v. | : | |
| WARDEN PETER MURPHY, ET AL. | : | DECEMBER 3, 2003 |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

**I.  INTRODUCTION**

This is a civil rights action in which the plaintiff, an inmate currently incarcerated at the Osborn Correctional Institution ("OCI"), is apparently seeking damages for what he alleges to be inadequate medical care following the fracture of a bone at the base of his right little finger. He alleges that defendants Janine Russell, R.N.,[1] and James McKenna, M.D., did not provide proper medical care for the injury to his right hand. Warden Peter Murphy and Commissioner John Armstrong are also named as defendants.

The facts which are pertinent to this lawsuit are as set forth in the affidavits, exhibits and Local Rule 56(a)1 Statement filed simultaneously herewith. These documents explain in detail the course of treatment for the plaintiff's injury, the appropriateness of that treatment, and the absence of any involvement on the part of defendants Armstrong and Murphy.

---

[1] While the Complaint lists a Nurse Russ, J. as a defendant, it is assumed that the plaintiff was referring to Janine Russell, R.N., since Nurse Russell saw the plaintiff on the evening of his injury and there is no Nurse Russ on the staff at the Hartford Correctional Center ("HCC").

## II.     SUMMARY JUDGMENT

Summary Judgment, "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. §56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). See also, Quarles v. General Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986). The party opposing a motion for summary judgment "may not rest upon the mere allegation or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. §56(e).

In discussing the history and propriety of summary judgment motions, the Supreme Court noted:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed. Rule Civ. Proc. 1 ... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

To successfully oppose a motion for summary judgment, the plaintiff must present "significant probative evidence to create a genuine issue of material fact." Soto v. Meachum, Civ. No. B-90-270(WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991). "[T]he mere verification by affidavit of one's own conclusory allegations is not sufficient to oppose a motion

2

for summary judgment." Greene v Georgia Pardons & Parole Bd., 807 F. Supp. 748, 751 n.5 (N.D. Ga. 1992) (citing Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984)). An Affidavit in which the plaintiff merely restates the conclusory allegations of the complaint and denies the truth of the affidavits filed by the defendants is insufficient to create an issue of fact that would make summary judgment inappropriate. Donnelly v. Guion, 467 F.2d 290, 293 (2d Cir. 1972). As one court has stated, to permit such an affidavit to form the basis of denying the defendants' motion for summary judgment "would amount to permitting the plaintiff to keep [his] case in court merely by swearing that [he] has a case." Zenith Vinyl Fabrics Corp. v. Ford Motor Co., 357 F. Supp. 133, 139 (E.D. Mich. 1973). The record in this case, even when considered in a light most favorable to the plaintiff, fully supports the granting of summary judgment in favor of the defendants.

### III. ARGUMENT

#### A. To The Extent That This Action May Be Deemed To Include A Claim For Money Damages Against The Defendants In Their Official Capacity, Such Claims Are Barred By The Eleventh Amendment To The United States Constitution.

"[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damage action against a State in federal court." Kentucky v. Graham, 473 U.S. 159, 169, 105 S. Ct. 3099, 3107 (1985). In Will v. Michigan Dept. of State Police, 491 U.S. 58. 109 S. Ct. 2304, 2309, (1989), the Supreme Court summarized the scope of Eleventh Amendment immunity as follows:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such

3

> suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity. That Congress, in passing § 1983, had no intention to disturb the State's Eleventh Amendment immunity and so alter the Federal-State balance in that respect was made clear in our decision in Quern.

(Citation omitted). Eleventh Amendment immunity is extended to suits against state officials in their official capacity since they represent only another way of pleading an action against the state. Hafer v. Melo, 502 U.S. 21, 112 S. Ct. 358, 361 (1991); Kentucky v. Graham, supra, 105 S. Ct. at 3105.

In this case, the plaintiff attempted to serve the defendants in their official and individual capacity. By way of relief, he is presumably seeking money damages. Therefore, to the extent that this suit seeks money damages from the defendants in their official capacity, it is barred by the Eleventh Amendment to the United States Constitution.

### B.   Defendants John Armstrong and Peter Murphy Had No Personal Involvement In Any Acts Which Are Alleged To Have Been Unconstitutional.

Personal involvement in an alleged constitutional deprivation is a prerequisite to an award of damages under 42 U.S.C. § 1983. Merriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989); Williams v. Smith, 781 F.2d 319 (2d Cir. 1986); Ayers vs. Coughlin, 780 F.2d 205 (2d Cir. 1985); McKinnon v. Patterson, 568 F.2d 930 (2d Cir. 1977); cert. denied, 434 U.S. 1087 (1978). The doctrine of respondeat superior is not applicable to § 1983 cases. Monell v. New York City Dep't of Social Services, 436 U.S. 658, 692-95 (1978).

A supervisory official who has not directly participated in the conduct complained of may be found personally involved in the deprivation of an inmate's right in other ways. For example, he may have failed to remedy the wrong after the violation was brought to his attention

4

through a report or appeal; created, or permitted to continue, the policy or custom pursuant to which the alleged violation occurred; or been grossly negligent in managing officials under his supervision who caused the unlawful incident. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (citing, Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

In the present case, the only allegations pertaining to Peter Murphy are statements to the effect that he was the Warden at HCC at the time of the plaintiff's injury and was responsible for the operation of the facility. There are no claims that Mr. Murphy knew the plaintiff or was aware of his injury. In the accompanying affidavit, former Warden Murphy states that he was not familiar with the plaintiff and never received any communication from the plaintiff regarding any medical issues. (Rule 56(a)1 Statement, para. 2). If the plaintiff had contacted former Warden Murphy regarding an injury to his right little finger, Mr. Murphy would have contacted the HCC medical staff to insure that the plaintiff was being seen and evaluated by them. (Rule 56(a)1 Statement, para. 3).

With respect to former Department of Correction ("DOC") Commissioner John Armstrong,[2] the Complaint simply alleges that he was the DOC Commissioner at the time of the plaintiff's injury and was responsible for implementing DOC's policies and regulations. There is no indication that former Commissioner Armstrong was familiar with the plaintiff or his injury.

It is clear that the plaintiff has included John Armstrong and Peter Murphy as defendants solely because of their supervisory positions within the DOC. Even if they had been aware of the plaintiff's injury, they would have been justified in relying upon the assurances of

---

[2] John Armstrong retired as DOC Commissioner earlier this year and is currently serving as a correctional consultant in Iraq at the request of the federal government. He is not available to prepare and sign any affidavits.

5

Dr. McKenna regarding the appropriateness of the treatment provided to the plaintiff. Prison Administrators who lack medical expertise, "must necessarily place their confidence in the reports of prison doctors whenever an inmate disputes a medical opinion as to what treatment is necessary and proper." McEachern v. Civiletti, 502 F. Supp. 532, 534 (N.D. Ill., 1980).

The plaintiff in this case has not alleged any facts sufficient to support a claim of supervisory liability against defendants Armstrong and Murphy.

### C.  The Defendants Were Not Deliberately Indifferent To The Plaintiff's Medical Needs.

To establish an unconstitutional denial of medical care, an inmate must prove "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 291 (1976). Mere negligence will not support a Section 1983 claim. The conduct complained of must "shock the conscience" or constitute a "barbarous act." McCloud v. Delaney, 677 F. Supp. 203, 232 (S.D.N.Y. 1988 ) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970). A treating physician will be liable under the Eighth Amendment only if his conduct is "repugnant to the conscience of mankind." Tomarkin v. Ward, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982) (quoting Estelle, 429 U.S. at 105-06).

Inmates do not have a constitutional right to the treatment of their choice. See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). Thus, mere disagreement with prison officials about what constitutes appropriate medical care does not state a claim cognizable under the Eighth Amendment. Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

There are both subjective and objective components to the deliberate indifference standard. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). The alleged deprivation must be "sufficiently serious" in objective terms. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The

6

term "serious medical need" contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway, supra, 37 F.3d at 66 (quoting Nance v. Kelley, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting)). See, e.g., Hathaway v. Coughlin, 841 F.2d 48 (2d Cir. 1998) (broken pins in hip); Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. 1974) (discarding inmate's ear rather than reattaching it); Martinez v. Mancusi, 443 F.2d 921, 923 (2d Cir. 1970) (refusal to follow surgeon's instructions), cert. denied, 401 U.S. 983 (1971). Not all medical conditions, however, are considered "serious." See, e.g., Jones v. Lewis, 874 F.2d 1125 (6th Cir. 1989) (mild concussion and broken jaw); Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988) (kidney stones); Malsh v. Austin, 901 F. Supp. 757 (S.D.N.Y. 1995) (delay in providing routine dental treatment); May v. Baldwin, 895 F. Supp. 1398 (D.Or. 1995) (dry skin); Glasper v. Wilson, 559 F. Supp. 12 (W.D.N.Y. 1982) (bowel problems).

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, an inmate also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind." Chance, supra, 143 F.3d at 702. "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

7

While it could be argued that a broken little finger is not a serious medical condition,[3] there is no evidence to support a finding of deliberate indifference even if we were to assume that the plaintiff's injury did constitute a serious medical condition.

In the present case, defendant Janine Russell, R.N., examined the plaintiff shortly after he hit his hand on the food cart on Friday evening, September 14, 2001. At that time she noted some slight swelling at the base of his right little finger and further noted that he was complaining of some mild pain. She gave the plaintiff some Motrin for pain and some ice to put on his hand to reduce the swelling. In addition, she put the plaintiff on the next physician sick call list to insure that he would be seen and evaluated by the facility physician on Monday, September 17, 2001. This was her only contact with the plaintiff. (Local Rule 56(a)1 Statement, paras. 5-7). Ms. Russell's evaluation, treatment and referral of the plaintiff on September 14, 2001 was thorough, professional and well within the standard of nursing care relating to the initial evaluation and treatment of such injuries. (Local Rule 56(a)1 Statement, para. 6).

Dr. James McKenna is a physician with many years of practice in Sports Medicine who has evaluated and treated many patients with injuries similar to the injury suffered by the plaintiff on September 14, 2001. (Local Rule 56(a)1 Statement, paras. 8-12). He first saw the plaintiff on the morning of September 17, 2001 and quickly diagnosed the injury as a fracture of the right fifth metacarpal. He then applied a gutter splint to the plaintiff's right lower arm which is standard treatment for such injuries. He also ordered an x-ray of the plaintiff's right hand. The x-ray was taken on September 19, 2001 and confirmed Dr. McKenna's earlier diagnosis.

---

[3] The alleged failure to even order an x-ray in the case of "a mere injury to a finger joint," was determined not to be cruel and unusual punishment. Rodriguez v. Joyce, 693 F. Supp. 1250, 253 (D.Me. 1988).

8

(Local Rule 56(a)1 Statement, paras. 13-15). Neither the Radiologist nor Dr. McKenna noted any displacement or unusual angulation when they reviewed the x-rays of the plaintiff's right hand. (Local Rule 56(a)1 Statement, para. 16).

On September 28, 2001, Dr. McKenna reinforced the splint which had gotten wet. The splint was removed by the plaintiff on October 22, 2001 because of a blister that had developed on his right fourth finger. Since the splint was due to come off anyway, the plaintiff's removal of the splint himself did not alter the healing process. Dr. McKenna cleaned the blister and applied a dressing when he saw the plaintiff on October 22, 2001. A week later, Dr. McKenna noted that the blister was healed. No additional appointments were scheduled since there was no need for further follow-up. (Local Rule 56(a)1 Statement, paras. 18-20).

Dr. McKenna's final contact with the plaintiff occurred on December 10, 2001 when the plaintiff reported to sick call complaining of pain in the area of the old fracture. At that time, Dr. McKenna noted a slight palmar angulation of the right fifth metacarpal which is quite normal in such cases. There was also a little bump over the fracture site which represents a bony callus that forms as the fracture heals. Dr. McKenna prescribed some Tylenol for pain and gave the plaintiff some exercises to do to facilitate flexibility and range of motion in the right hand. (Local Rule 56(a)1 Statement, paras. 21-22).

On three occasions between December 10, 2001 and May 22, 2002, the plaintiff received pain medication from the HCC nursing staff following complaints of pain in his right hand. He was not referred back to Dr. McKenna for any further follow-up and there is no indication in the record that he ever asked for any further evaluation by Dr. McKenna. The plaintiff was transferred from HCC to OCI on July 18, 2002. He did not report any problems relating to his

right hand at that time. Medical records relating to the plaintiff reflect that he did not offer any complaints or seek any medical attention regarding his right hand during the period May 22, 2002 to June 30, 2003. On the latter date, he did express to a mental health staff person some problems with range of motion in his right hand. A physical exam conducted at OCI on July 8, 2003 did not note any range of motion problem . (Local Rule 56(a)1 Statement, paras. 22-28).

It is clear from the medical record and the accompanying affidavits that the plaintiff received timely and appropriate evaluation and treatment for the injury to his finger from both Janine Russell and Dr. McKenna. Any claim to the contrary by the plaintiff is unfounded and unsupported by the evidence.

### D. In The Event That The Court Finds That The Defendants May Have Violated Some Constitutional Right Of The Plaintiff, They Should Be Entitled To Qualified Immunity.

The doctrine of qualified immunity shields state officials from liability for damages if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). The Second Circuit has described the circumstances where qualified immunity would apply as follows:

> a government official sued in his individual capacity ... is entitled to qualified immunity in any of three circumstances: (1) if the conduct attributed to him is not prohibited by federal law ...; or (2) where the conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct ...; or (3) if the defendant's action was 'objective[ly] legal[ly] reasonable[ ] ... in light of the legal rules that were clearly established at the time it was taken.' These three issues should be approached in sequence, for if the second is resolved favorably to the official, the third becomes

10

> moot; a favorable resolution of the first moots both the second and the third.

X-Men Security, Inc. v. Pataki, 196 F.3d 56, 65-66 (2d Circ. 1999) (citations omitted).

A right is clearly established if a reasonable person in the defendant's position should know that his or her actions violate that right. The unlawfulness must be apparent. McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 278 (2d Cir. 1999) (citation omitted). In other words, a state official should not be forced to have to defend his actions against civil rights challenges unless the state of the law at the time of the alleged conduct gave him "fair warning" that his actions were unlawful. Hope v. Pelzer, 122 U.S. 1508, 1516 (2002).

In the present case, the plaintiff was seen by Ms. Russell shortly after he hit his hand on the food cart. She provided immediate evaluation and treatment and insured that the plaintiff would see the facility physician on his next visit to the facility. Dr. McKenna evaluated the plaintiff's finger, made a correct diagnosis, applied an appropriate cast, verified his diagnosis with an x-ray, reinforced the cast as necessary, treated a small blister that developed on another finger, and later prescribed medication and exercises when the plaintiff complained of some pain and problems flexing this hand. We are not aware of any court ruling that would suggest that the defendants' response to the fracture of the plaintiff's right fifth metacarpal was anything other than appropriate and within the accepted standard of care. It is unlikely that any reasonable person in the position of Nurse Russell and Dr. McKenna would consider their actions a violation of the plaintiff's constitutional rights.

## IV. CONCLUSION

For all of the foregoing reasons, the defendants' Motion for Summary Judgment should be granted.

DEFENDANTS
Warden Peter Murphy, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: *Richard Couture*
Richard T. Couture
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105
Federal Bar #ct05480
E-Mail: richard.couture@po.state.ct.us
Tel.: (860) 808-5450
Fax: (860) 808-5591

## CERTIFICATION

I hereby certify that a copy of the foregoing Defendants' Memorandum in Support of Motion for Summary Judgment was sent by first class mail, postage prepaid, this 3rd day of December, 2003, to:

Oscar Ortiz, No. 212768
Osborn Correctional Institution
335 Bilton Road
P.O. Box 100
Somers, CT 06071

*Richard Couture*
Richard T. Couture
Assistant Attorney General