UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

| | | |
|---|---|---|
| OSCAR ORTIZ | : | PRISONER<br>CIVIL NO. 3:02CV1994 (GLG)(WIG) |
| v. | : | |
| WARDEN PETER MURPHY, ET AL. | : | DECEMBER 3, 2003 |

2003 DEC -4 P 4: 45

## AFFIDAVIT OF JAMES McKENNA, M.D., IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

James McKenna, M.D., being first duly sworn, deposes and says:

1. I am a physician licensed to practice medicine in the State of Connecticut.

2. From 1953 to 1988, I had a practice including Family Medicine and Sports Medicine in Torrington, Connecticut.

3. From 1988 to the present, my private practice has focused primarily on Sports Medicine.

4. In addition to my private practice, from 1992 to the present I have worked part-time as a staff physician for the University of Connecticut Health Center's Correctional Managed Health Care Program at the Hartford Correctional Center ("HCC").

5. During my many years of involvement with Sports Medicine, I have evaluated and treated numerous injuries involving bones and joints including injuries similar to that suffered by Mr. Oscar Ortiz at HCC on September 14, 2001.

6. After he bumped into a food cart on the evening of September 14, 2001, Mr. Ortiz was seen in the HCC medical unit by Janine Russell, R.N.

7. At that time, Nurse Russell examined Mr. Ortiz's right hand and noted some slight swelling at the base of his right little finger. She further noted that he had good range of motion in the right hand, mild pain and no bruising.

8. Following her evaluation of Mr. Ortiz on the evening of September 14, 2001, Nurse Russell gave him some Motrin for pain and some ice to reduce the swelling. She also put Mr. Ortiz on the list of inmates to see me on Monday morning, September 17, 2001 for further evaluation and treatment as appropriate.

9. Nurse Russell conducted her evaluation of Mr. Ortiz in a very thorough and professional manner and she provided appropriate and adequate care for him at that time. She followed appropriate protocol for such injuries and her actions were well within the standard of nursing care for initial evaluation and treatment of such injuries.

10. I first saw Mr. Ortiz at approximately 10:15 a.m. on Monday, September 17, 2001 which was the first physician sick call held at HCC following Mr. Ortiz's injury on the evening of September 14, 2001.

11. As noted in my chart entry of September 17, 2001, following my examination of Mr. Ortiz's right hand, I immediately noted a probable fracture of the right fifth metacarpal. At that time, I applied a gutter splint which is a plaster splint that extended from below the right elbow to the last two fingers of the right hand. This is standard treatment for Mr. Ortiz's type of injury. I also ordered x-rays of Mr. Ortiz's right hand to insure that I had made the correct diagnosis.

12. The x-rays taken on September 19, 2001 showed a fracture of the right fifth metacarpal with "no interval healing" which simply means that the fracture was new and had not

yet begun to heal. While the attached Radiologist report refers to the "left" fifth metacarpal, the x-rays are of the right hand and the reference to "left" is a typographical error.

13. In his report, the Radiologist did not note any displacement or unusual angulation and my personal review of the x-rays confirmed this.

14. I scheduled Mr. Ortiz to see me on September 19, 2001 to review the x-ray results. He did not show up for sick call that day. Since the x-ray confirmed my earlier diagnosis, there was no need to reschedule the appointment.

15. I next saw Mr. Ortiz on September 28, 2001. I noted at that time that he had gotten his splint wet. I therefore applied some new plaster to reinforce the splint. Mr. Ortiz did not have any particular complaints at that time.

16. I next saw Mr. Ortiz on October 22, 2001, following at least one missed appointment. When I saw Mr. Ortiz on October 22, 2001, he informed me that he had taken the splint off earlier that day due to a blister that had developed on his fourth finger. Since the splint was due to come off shortly and the fracture had healed by then, the removal of the splint by Mr. Ortiz did not alter the healing process. I cleaned off the blister and applied a dressing to the area and arranged to see Mr. Ortiz for one final time a week later to check on the blister.

17. I saw Mr. Ortiz again on October 29, 2001, at which time I noted that the blister on his fourth finger had healed. I did not make any further appointments to see Mr. Ortiz as there was no need to do so at that time.

18. I next saw Mr. Ortiz on December 10, 2001, when he came to sick call complaining of pain in the area of his old fracture. At that time I noted a slight palmar angulation of the right fifth metacarpal which is quite normal in such cases. He also would have a little bump over the fracture site which represents a bony callus that forms as the fracture heals.

Mr. Ortiz also indicated during this visit that he had difficulty making a fist with his right hand. After some persuasion, he was able to fully flex his fifth finger and make a fist. I gave him some exercises to do to facilitate his range of motion and also prescribed some Tylenol for pain.

19. Mr. Ortiz's visit to sick call on December 10, 2001 was my last contact with him. I note from his RT60 printout that he transferred from HCC to the Osborn Correctional Institution ("OCI") on July 18, 2002 and remains at OCI at present. See RT60 attached hereto as Exhibit A.

20. I have attached pertinent medical records hereto as Exhibit B. These include chart entries, physician orders, an x-ray report, a medical incident report, a transfer summary dated July 18, 2002 and a physical exam dated July 8, 2003. References to another medical condition unrelated to the hand injury have been redacted from these records due to privacy concerns.

21. The records reflect that Mr. Ortiz was seen by nursing staff at HCC on January 30, 2002, March 27, 2002 and May 22, 2002 at which time he complained of pain in his right hand. On these occasions, Mr. Ortiz was prescribed Motrin for pain relief.

22. When Mr. Ortiz was transferred to OCI on July 18, 2002, the transfer summary that was completed at that time reflects that he did not report any medical problems relating to his hand.

23. From May 22, 2002 to June 30, 2003, the record reflects that Mr. Ortiz did not offer any complaints or seek any further medical attention relating to his right hand.

24. During a discussion with mental health staff at OCI on June 30, 2003, Mr. Ortiz expressed some frustration over health issues in general and indicated that he was having problems with range of motion in right hand due to the earlier injury.

25. During the course of a physical exam of Mr. Ortiz at OCI conducted on July 8, 2003, there was no note of any problem with range of motion to the extremities.

26. I have not had any contact with Mr. Ortiz since December 10, 2001. He has never been referred back to see me since that time and there is no indication that he ever requested any further evaluation by me or contact with me since that time.

27. The injury to Mr. Ortiz's right fifth metacarpal was properly evaluated and treated by Nurse Janine Russell and myself as described above and in the records attached as Exhibit B. When I last saw Mr. Ortiz on December 10, 2001, I encouraged him to exercise his hand to maintain flexibility and good range of motion. I was not aware that Mr. Ortiz had any continuing issues regarding his hand until I was made aware of this lawsuit in July, 2003. the issues which he has raised with medical staff on three or four occasions since December, 2001 are not that unusual. It is fairly common for patients to experience periodic discomfort following a metacarpal fracture. It is also important to continue to exercise the hand to maintain maximum flexibility.

I, James McKenna, M.D., do hereby swear that the contents of the foregoing affidavit are true and accurate to the best of my knowledge and belief.

_____
James McKenna, M.D.

Subscribed and sworn to, before me, this 3d day of DECEMBER, 2003.

_____
Richard T. Couture
Commissioner of the Superior Court

5

DEFENDANTS
Warden Peter Murphy, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Richard T. Couture
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105
Federal Bar #ct05480
E-Mail: richard.couture@po.state.ct.us
Tel.: (860) 808-5450
Fax: (860) 808-5591

## CERTIFICATION

I hereby certify that a copy of the foregoing Affidavit of James McKenna, M.D., with attachments, was sent by first class mail, postage prepaid, this 3rd day of December, 2003, to:

Oscar Ortiz, No. 212768
Osborn Correctional Institution
335 Bilton Road
P.O. Box 100
Somers, CT 06071

_____
Richard T. Couture
Assistant Attorney General

6