FILED

2003 DEC -4 P 4: 45

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OSCAR ORTIZ | : | PRISONER<br>CIVIL NO. 3:02CV1994 (GLG)(WIG) |
| v. | : | |
| WARDEN PETER MURPHY, ET AL. | : | DECEMBER 3, 2003 |

### DEFENDANTS' LOCAL RULE 56(a)1 STATEMENT

The defendants respectfully represent, pursuant to Local Rule 56(a)1, that the following material facts are not in dispute:

1. Peter Murphy was the Warden at the Hartford Correctional Center ("HCC") from February 14, 2000 through June 30, 2002. (Murphy Affidavit, para. 1).

2. Warden Murphy is not personally familiar with the plaintiff, Oscar Ortiz, nor did Warden Murphy receive any communications from Mr. Ortiz regarding any medical issues during the period of time that he was the Warden at HCC. (Murphy Affidavit, para. 2).

3. If Mr. Ortiz had contacted Warden Murphy regarding any concerns he had about treatment for the injury to his right little finger, Warden Murphy would have contacted the HCC medical staff to insure that Mr. Ortiz was being seen and evaluated by them. (Murphy Affidavit, para. 3).

4. Janine Russell is a Registered Nurse employed by the University of Connecticut Health Center's Correctional Managed Health Care Program. She is assigned to HCC. (Russell Affidavit, paras. 1 and 2).

5. Nurse Russell saw Mr. Oscar Ortiz in the medical unit at HCC at approximately 7:00 p.m. on Friday, September 14, 2001. Mr. Ortiz reported to Nurse Russell at that time that

he had hit his right hand on a food cart. Upon examining his hand, Nurse Russell noted some slight swelling at the base of his right small finger. No bruising was noted and Mr. Ortiz had good range of motion in his right hand. He did complain that he had some mild pain. (Russell Affidavit, paras. 3 and 4; Exhibits A and B to Russell Affidavit).

6. Nurse Russell gave Mr. Ortiz some Motrin for pain and some ice to put on his hand to reduce the swelling. She also placed Mr. Ortiz on the list to see the facility physician at the next M.D. sick call which was to be conducted on Monday, September 17, 2001. Ms. Russell's actions on the evening of September 14, 2001 were in accordance with standard protocol for such injuries. She conducted her evaluation of Mr. Ortiz in a very thorough and professional manner. Her actions were well within the standard of nursing care for initial evaluation and treatment of such injuries. (Russell Affidavit, para. 5; Exhibits A and B to Russell Affidavit; McKenna Affidavit, paras. 6-9).

7. Nurse Russell has had no further contact with Mr. Ortiz since the evening of September 14, 2001. (Russell Affidavit, paras. 8-9; Exhibit B to McKenna Affidavit).

8. Dr. James McKenna is a physician licensed to practice medicine in the State of Connecticut. (McKenna Affidavit, para. 1).

9. From 1953 to 1988, Dr. McKenna had a practice in Torrington, Connecticut involving Family Practice and Sports Medicine. (McKenna Affidavit, para. 2).

10. From 1988 to the present, Dr. McKenna's private practice has focused primarily on Sports Medicine. (McKenna Affidavit, para. 3).

11. In addition to his private practice, Dr. McKenna has worked part-time as a staff physician for the University of Connecticut Health Center's Correctional Managed Health Care Program at HCC from 1992 to the present. (McKenna Affidavit, para. 4).

12. During his many years of practice in Sports Medicine, Dr. McKenna has evaluated and treated numerous injuries involving bones and joints including injuries similar to that suffered by Mr. Oscar Ortiz on September 14, 2001. (McKenna Affidavit, para. 5).

13. Dr. McKenna first saw Mr. Ortiz at approximately 10:15 a.m. on Monday, September 17, 2001 which was the first physician sick call held at HCC following Mr. Ortiz's injury on the evening of September 14, 2001. (McKenna Affidavit, para. 10).

14. When Dr. McKenna examined Mr. Ortiz's right hand on September 17, 2001, he noted in the chart that Mr. Ortiz had a probable fracture of the right fifth metacarpal. At that time, Dr. McKenna applied a gutter splint which is a plaster splint that extended from below the right elbow to the last two fingers of the right hand. This is standard treatment for Mr. Ortiz's type of injury. Dr. McKenna also ordered x-rays of Mr. Ortiz's right hand to insure that he had made the correct diagnosis. (McKenna Affidavit, para. 11; Exhibit B to McKenna Affidavit).

15. The x-rays taken on September 19, 2001, showed a fracture of Mr. Ortiz's right fifth metacarpal with "no interval healing" which means that the fracture was new and had not yet begun to heal. The reference in the Radiologist's report to "left" fifth metacarpal is an obvious typographical error. (McKenna Affidavit, para. 12; Exhibit B to McKenna Affidavit).

16. Neither the Radiologist nor Dr. McKenna noted any displacement or unusual angulation upon their review of the x-rays of Mr. Ortiz's right hand. (McKenna Affidavit, para. 13; Exhibit B to McKenna Affidavit).

17. Mr. Ortiz did not show up for a follow-up appointment that had been scheduled with Dr. McKenna on September 19, 2001. Since the x-ray confirmed Dr. McKenna's earlier diagnosis, there was no need to reschedule that appointment. (McKenna Affidavit, para. 14).

18. Dr. McKenna next saw Mr. Ortiz on September 28, 2001. Dr. McKenna noted at that time that Mr. Ortiz's splint had gotten wet so he applied some new plaster to reinforce the splint. Mr. Ortiz did not have any particular complaints at that time. (McKenna Affidavit, para. 15; Exhibit B to McKenna Affidavit).

19. Mr. Ortiz was next seen by Dr. McKenna on October 22, 2001 following at least one missed appointment. At that time, Mr. Ortiz informed Dr. McKenna that he had taken the splint off earlier that day because of a blister that had developed on his fourth finger. The removal of the splint by Mr. Ortiz did not alter the healing process since the splint was due to come off at that time and the fracture was well healed by then. Dr. McKenna cleaned the blister, applied a dressing to the area and arranged to see Mr. Ortiz in one week to check on the blister. (McKenna Affidavit, para. 16; Exhibit B to McKenna Affidavit).

20. Dr. McKenna saw Mr. Ortiz again on October 29, 2001 at which time he noted that the blister on Mr. Ortiz's fourth finger had healed. There was no need for any further follow-up. (McKenna Affidavit, para. 17; Exhibit B to McKenna Affidavit).

21. Dr. McKenna next saw Mr. Ortiz on December 10, 2001, when he came to sick call complaining of pain in the area of the earlier fracture. Dr. McKenna noted at that time a slight palmar angulation of the right fifth metacarpal which is quite normal in such cases. There was also a little bump over the fracture site which represents a bony callus that forms as the fracture heals. During this visit, Mr. Ortiz also indicated that he had difficulty making a fist with

his right hand. After some persuasion, Mr. Ortiz was able to fully flex his fifth finger and make a fist. Dr. McKenna gave Mr. Ortiz some exercises to do to facilitate his range of motion and also prescribed some Tylenol for pain. (McKenna Affidavit, para. 18; Exhibit B to McKenna Affidavit).

22. Mr. Ortiz's visit to sick call at HCC on December 10, 2001, was Dr. McKenna's last contact with him. Mr. Ortiz transferred from HCC to the Osborn Correctional Institution ("OCI") on July 18, 2002 and remains at OCI at present. (McKenna Affidavit, para. 19; Exhibits A and B to McKenna Affidavit).

23. Records attached to the affidavit of Dr. McKenna as Exhibit B reflect that Mr. Ortiz was seen by nursing staff at HCC on January 30, 2002, March 27, 2002 and May 22, 2002 at which times he was complaining of pain in his right hand. On those occasions, he was prescribed Motrin for pain relief . (McKenna Affidavit, para. 21; Exhibit B to McKenna Affidavit).

24. At the time of his transfer to OCI on July 18, 2002, Mr. Ortiz did not report any medical problems relating to his right hand. (McKenna Affidavit, para. 22; Exhibit B to McKenna Affidavit).

25. Medical records relating to Mr. Ortiz reflect that he did not offer any complaints or seek any further medical attention relating to his right hand during the period from May 22, 2002 to June 30, 2003. (McKenna Affidavit, para. 23; Exhibit B to McKenna Affidavit).

26. On June 30, 2003, Mr. Ortiz expressed some frustration over health issues in general and indicted that he was having problems with range of motion in the right hand during a

discussion with mental health staff at OCI. (McKenna Affidavit, para. 24; Exhibit B to McKenna Affidavit).

27. During the course of a physical exam of Mr. Ortiz at OCI on July 8, 2003, there was no note of any problem with range of motion to the extremities. (McKenna Affidavit, para. 25; Exhibit B to McKenna Affidavit).

28. Dr. McKenna has had no contact with Mr. Ortiz since December 10, 2001. Mr. Ortiz has not been referred back to Dr. McKenna since that time and there is no indication in the record that he ever requested any further evaluation by Dr. McKenna or contact with Dr. McKenna since December 10, 2001. (McKenna Affidavit, para. 26; Exhibit B to McKenna Affidavit).

29. The injury which Mr. Ortiz received to his right fifth metacarpal on September 14, 2001, was properly evaluated and treated by defendant Janine Russell, R.N., and defendant James McKenna, M.D., as is evident from the affidavits of Nurse Russell and Dr. McKenna and the medical records included in Exhibit B to Dr. McKenna's affidavit.

DEFENDANTS
Warden Peter Murphy, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Richard T. Couture
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105
Federal Bar #ct05480
E-Mail: richard.couture@po.state.ct.us
Tel.: (860) 808-5450
Fax: (860) 808-5591

## CERTIFICATION

I hereby certify that a copy of the foregoing Local Rule 56(a)1 Statement was sent by first class mail, postage prepaid, this 3rd day of December, 2003, to:

Oscar Ortiz, No. 212768
Osborn Correctional Institution
335 Bilton Road
P.O. Box 100
Somers, CT  06071

_____
Richard T. Couture
Assistant Attorney General